We are going to move now to Case 5, Appeal 21-2406, Tony Love v. Frank Vanihel. And we're going to begin with oral argument from Mr. Rasheed. Good morning, Your Honors. May it please the Court. The Indiana Department of Correction deprived Appellant Tony Love of due process of law when it decided that it would use its discretion to revoke all 5,700 days' worth of his earned good time credits for his role in a prison fight before Mr. Love's disciplinary hearing had even convened and without giving Mr. Love any opportunity to argue for a lesser punishment. Mr. Rasheed, I'd like to focus in on the Constitutional Claim No. 2 that you're making here, that there's an arbitrariness to the amount that was revoked, and Love's punishment was arbitrary as compared to other individuals. You cite Turner as an example of the prison regulation burdening a constitutional right. What constitutional right are you arguing exists here on this Constitutional Claim No. 2? So we're arguing, Your Honor, that because Mr. Love has a constitutionally protected interest in his good time credits, that interest cannot be interfered with for arbitrary or irrational reasons that would fail rational basis review. But what is the right? Is the constitutional right that you're seeking to point to? Explain that to us. Where does that come from? What's the font of it? So, Your Honor, it comes from kind of the general background concept in equal protection law that you can't treat similarly situated people differently for reasons that are wholly arbitrary or irrational. And so what we're arguing here is the Department has this Executive Directive 1709, and it is kind of picking and choosing when to apply it. In Mr. Love's case, they've come all the way up to this court and saying, no, the policy is the policy. We had every right to apply it and take away all of his good time credits without hearing what he might have to say. We pointed to other cases, Matthew Schrock, who was involved in the same fight, where the Department gave him two separate conduct write-ups that were exactly a year, which was the maximum specified by the prison's disciplinary code. We also pointed to the case of Rodney Perry, another inmate who's separate from this fight, but for whom the Department initially took away 4,500 days' worth of good time credits, but then later decided it was going to reduce that to only 180 days, despite the fact that Mr. Perry, during his incident, had stolen a guard's pepper spray and pepper sprayed the guard in the face. We don't know why that was reduced, do we? I had the same question. Thank you. We don't, Your Honor. As far as I can tell, it's not available from any public record, so the state would have that information, but we haven't been able to uncover it. It sounds like that theory would put federal criminal sentences generally under the gun of the Due Process Clause because we get disparities, we get differences in charging decisions, we get wide disparities. As far as I know, those have not proven to be valid constitutional grounds for challenging sentences. Your Honor, our theory here is slightly different. It is not that the disparity is what creates the constitutional violation. It's arbitrarily deciding when the policy is going to apply. If I could, I'd like to ask you to address the question that I thought we asked in our briefing order. If I understand your argument correctly, if we were to accept it and order a new hearing for Mr. Love, in which he would have the opportunity to present mitigating evidence and argue for a lesser punishment, we could send it back and it would be perfectly permissible under your constitutional theory for the hearing officer to do exactly the same thing again, to reach exactly the same result and impose a more than 15-year loss of liberty through the kind of bobtailed due process under Wolf and Hill. Is that right? So, two things, Your Honor. One, to answer your question directly, yes. We're not able to detect anything in Wolf, Hill, or background due process law that scales the process based on how many... The answer is 18 months. In Hill, it was 100 days. Here we're talking about an order of magnitude difference, and I'll state this as well, but I'm trying to understand and I'd like to know if there is any precedent prior to this case for extending these kind of bobtailed due process procedures in prison discipline cases to anything like this scale of punishment. So, Your Honor, as far as I can tell, what happened in this case appears to be fairly unique. When we researched this, you find cases of credit revocations. It's usually nowhere near this many. Exactly. And if you go back to the logic of Wolf about the need for swift punishment and dealing with prison realities and the differentiation between those and criminal punishment, it sure looks to me as if the Supreme Court was assuming in Wolf and again in Hill these much shorter, much more modest liberty interests. But did you find anything that rebutts that theory in your research? Your Honor, I didn't find anything that rebutted it. To be frank, I didn't find anything that addressed it either way. What we read Wolf and Hill as describing is due process doesn't stop at the prison gate, but it does sometimes have to bend to the realities of prison. Of course it does, yes. The question is whether we should accept what looks like an unprecedented extension of Wolf and Hill in this case to another full order of magnitude from a maximum of a year and a half to more than 15 years of punishment through those processes. So, Your Honor, I think the answer is no. The reason we provided in our briefing is actually a straightforward reason to do that. Well, it's interesting though because I'm having trouble on your argument that discretion is needed. What do we do with mandatory minimum sentences? So, Your Honor, much like in the criminal sentencing context, the legislature can set a determinate sentence for an offense and then there's nothing to argue about it at a hearing. That's not the case. That's not what happened here. And, frankly, it's not what's at issue in most good time credit regimes I've seen in states around the country. The Indiana legislature here did give the Department of Discretion discretion to decide how many credits to take away. So why does the Constitution care whether the discretion is exercised by the commissioner or by the individual hearing officer? So what the Constitution cares about is the decision maker here is the Department of Correction under the statute. They have discretion about what to do. They recognize that discretion for the 40 years before this policy was in effect and appear to have reverted back to a discretionary regime after it was not incorporated in the 2020 update. Since they have discretion about what to do and since they are deciding what to do about a protected liberty interest in Mr. Love's good time credits, notice and an opportunity to be heard. Opportunity to be heard means they have to actually hear and consider his arguments before they decide how to apply that discretion. And in this case, there's no real dispute that they didn't do that. At page 29 to 30 of the state's brief, they admitted that nothing that Mr. Love said would have made any difference in their determination because apparently in his case, although as we discussed earlier, not on others, the department was determined to follow the policy no matter what Mr. Love might say or what the facts of his case might be.  Question on forfeiture. How did Mr. Love preserve the constitutional arguments in the habeas petition? Even he's pro se, we can strew it liberally, but the only word I see in his challenge is the word excessive. Is there any other way that he has raised these constitutional arguments or are they forfeited? So, Your Honor, they're not forfeited. Let me address both forfeiture and procedural default because they're related here. As for procedural default, in Mr. Love's hearing, he receives a notice before his hearing that says, if you were found guilty, you'll be sanctioned in accordance with our policy. He looks at the policy, and the policy tells him the most he can lose is a year. The executive directive is not provided to him. At no point during the state administrative appeals did the state ever say it's relying on the policy. Let me speed you along. You know, you've got a good cause argument there. And prejudice may be a different story, but you've got a good cause argument. I'm specifically focusing on a forfeiture, though. Isn't he saying in his petition excessive in relation, the directive in relation to the policy? He's not saying excessive, the directive in relation to the Constitution. So what he was saying is really the only argument that made sense to him is that you didn't follow your policy. It says up to a year, and you're taking away more than that. And so he's making a challenge to not following the policy. And that's not a constitutional argument, though, is it? That's true, Your Honor, but the first time he learns about the policy that forms the basis of the constitutional argument is when the state files its response to the district court's order to show cause. At that point, he's got 100 new pages of filings he's never seen before. He's pro se, doesn't have access to the law library, and he only has 23 days to come up with a response. So we would say that there really isn't a forfeiture under these facts. If there was one, it's one that the court should excuse, given that the state had it within its power all along to tell him what policy they were relying on. Instead, they gave him misleading notices that told him a different policy altogether was going to apply to his case. And so he didn't have a fair opportunity to even know what was going on in his case, much less develop his arguments. Did you want to spend a little time on the prejudice or the cause of prejudice? Sure, Your Honor. I would say the prejudice here, I'm going to give the state some credit. If you look at their adult disciplinary offender policy, they say that they're going to take into account things like disparities with other inmates with similar conduct or records, the inmate's past record of good behavior. So in this case, Mr. Love had earned 15 and a half years of good time credits by behaving well. He received a much harsher sanction than any of the other inmates involved in the fight that spawned this kind of habeas petition. So prejudice, the state is admitting that they didn't take into account and wouldn't have taken into account anything he said. If he had an opportunity to actually make his mitigating arguments, there's a lot of difference. There's a lot to the state who could potentially come down from 5,700 days of credits and still impose a substantial punishment. I think it's likely that he would have received a lesser sanction than he did if he had been given the chance. You will be given rebuttal time. Thank you, Mr. Rashid. Thank you. We're going to now move Mr. Banks to you for argument from the appellee. May it please the court. Mr. Love's habeas petition was rightly denied, and this court should affirm that denial. I'd like to begin, Judge Brennan, with the question you asked about cause. The record does show that Mr. Love was given notice of the executive directive upon his rehearing. So the first sanction was imposed. That was vacated. And then on the rehearing, the same sanction was opposed. In his memo attached to his traverse, document 15 in the district court record, he says that he had notice of the executive directive during the rehearing proceedings, which means that they would have informed any mitigating arguments that he did or could have made in that proceeding. So we don't believe cause has been shown, and this claim is procedurally defaulted. He hasn't shown cause and prejudice, nor has he shown actual innocence. And couldn't, given the clear evidence of his guilt for this particular offense. And that is what Hill and Wolf go to. Given that evidence of his guilt, why not prosecute him? We did, Your Honor. We was prosecuted in state court and found guilty of three counts of battery on a public safety official. And the sentences were consecutive, correct? They were concurrent, I believe, Your Honor. You can correct me on that. I looked at it like three weeks ago, but I'm pretty sure they were concurrent. But even if not, the maximum sentence he was- Concurrent with each other or with his murder sentence? Concurrent with each other, and then consecutive to his murder sentence. I'm sorry, Your Honor, yes. Consecutive to the murder sentence, which I think is required statutorily under New England. That's the way you would do that anyway, yeah. Correct. But to the Wolf and Hill point, Wolf and Hill's procedures all go to ensuring that we have an accurate determination of guilt. That is, and for the ability to have an offender be able to create a defense. That's why they're required to have notice, 24 hours at least between that notice and the disciplinary hearing. That's why Hill requires some evidence standard. All of that goes to the accuracy to reduce the risk of error in these judgments. Adding some other type of procedure or forbidding mandatory sanctions upon a finding of guilt by an impartial adjudicator does nothing to minimize the risk of error that Wolf and Hill are tuned for. And every other procedure will do process right. This is not a- the right to credit time does not derive from the Constitution itself. Of course not. It derives from state law, and then that's why this is only a procedural claim. Could you point us to cases upholding the minimal procedures used in Wolf and Hill, accepted in Wolf and Hill, for more than a year and a half of good time revocation? I believe there is a Third Circuit case cited in our brief, and its name escapes me, Your Honor, where I believe there were 1,000 days. And the Third Circuit in that case said something to the effect of while this sanction may seem to be harsh, it is meant to send a message to other offenders that they take violence in the prison seriously. And that is what is going on in the executive directive in this case. There's no doubt that you're entitled to take violence in the prison seriously. Sorry, I'm trying to find the case you're talking about. If it wasn't briefed, Your Honor, I can surely supplement it, but I'm almost positive it wasn't the Third Circuit case. Newby? Is that it? I believe that's right. Okay. Any others? None others that I have off the top of my head, Your Honor. So we've got one circuit saying three years. Well, Mr. Webb in this case, not a circuit case, but Mr. Webb lost about 2,500 credit days in this case, and that was upheld. But I don't believe there's a circuit. It was upheld where? It was the district court denied habeas relief in that case. Is there an appeal pending? But I don't believe there – I am unsure about that. I don't believe so. But it sounds like we are – you're urging us to go into a pretty brave new world here where the minimal procedural protections of Wolf and Hill are now going to be extended to more than a decade of denial of liberty, and I'm trying to figure out why we should do that. A couple of responses to that, Your Honor. First, I think the new ground that is asked to be broken here is adding some type of right to a discretionary sentence or two. But on the other hand, Your Honor – That's what – I agree. That's not what our briefing order was about. Correct. But to the extent, at least as far as I know, the Morrissey procedures, which have to do with probationers and parole, and I believe Blackbeaver-Romano, there's no indication in the case law that those rights scale or are added to or subtracted from when a parolee has maybe 20 years on the hook as opposed to a probationer that has one year on the hook. I am unaware of any authority that changes the procedures under Morrissey for probationers that have significantly more time backed up than other ones. So I don't think it's breaking new ground. It is an empirical matter. It's a numerical matter, Your Honor. Yes, this may be a large-numbered case. But when it comes to the due process protections, they remain the same for many reasons, but primarily because prisons are dangerous places and prison administrators have limited tools to be able to deal with those in their charge. Right. Now, Wolf and Hill both emphasize, in essence, the flexible and contextual nature for due process, right? Sure. Yes, Your Honor. And if we go to the canonical standard in Matthews v. Eldridge, two of the critical factors we want to consider are the private interest at stake and the risks of error, correct? Correct. And that's why if the private interest at stake is ten times what was considered in Wolf, my questions arise. And if we are worried about risks of error, you would agree that a prison disciplinary sanction can be upheld on some evidence which is uncorroborated hearsay, right? I believe that's the case, Your Honor, yes. That doesn't sound like a criminal trial to me. It is not a criminal trial, Your Honor. It's a long way from it. Long way from it. I don't disagree with any of that, Your Honor. But Wolf is the clearly established law in this case that these are the minimum amount of due process. And Baxter from the Supreme Court and White from this court have been hesitant to add to that list precisely because of the… I'm not suggesting we add to the list. I'm suggesting that if you want to impose this severe a sanction, you go, as you apparently did, into the state criminal courts. That's interesting, Your Honor. I don't believe that there's any authority for the idea that those two routes are mutually exclusive. They are not mutually exclusive. The question has to do with how much punishment is acceptable given the minimal processes, the high risks of error that we tolerate in prison disciplinary proceedings. Without counsel, without confrontation, without compulsory process, and on and on and on. I am unaware, and of course, as you mentioned, Judge Hamilton, this question hasn't been briefed. I am unaware of maybe what that triggering mechanism would be to say that a sanction is so punitive in the prison context that it must be transported to the criminal context or that additional procedures like those that we would see in the criminal context must apply in the prison context. I think that would take some substantial research, and I think in any event it would be somewhat of a line-drawing problem. Sure, there are ways that we could say what is reasonable and what is not, but typically in this context, in the prison context, if we are talking about what is reasonable, then those are the type of issues that are left to the discretion of prison authorities. Part of this is the indeterminacy of the underlying sentence, right? We are talking about moving a parole date. Correct, Your Honor. We are talking about moving a parole date. I would note here to the extent that the court has any queasiness or concern that Mr. Webb had all of his credit time taken just like Mr. Love did, and those are different numbers. That is going to happen any time we have a mandatory sanction. So if there were a sanction of 100 days and there were two offenders who committed the same crime and one only had 20 and one had 120, the person who had 120 would rightly say that I received a worse punishment even though the punishment was fixed. This is an issue that is going to rise in all fixed punishment cases, and in fact, the executive directive attempts to alleviate any concern about that because the second paragraph of that directive, which has been a little discussed in the briefing, is that once an offender is found guilty of battering a staff member, causing serious bodily injury, not only can they have all of their credit time taken, but in the future, if they commit any major violation, not only battering on a staff member, but any other major violation, they are subject to having all of their credit time taken in the future. So what the Department of Correction has said is this is a mark that goes on your record because we do not tolerate violence in our facilities. And so even the facial discrepancy that would be created by mandatory sanctions, which we know there is no constitutional issue with, is somewhat alleviated by the terms of the directive. If this court has no further questions of me, I ask that you affirm the district court. Thank you very much, Mr. Banks. Mr. Rashid, we're going to give you four minutes in rebuttal. Thank you, Your Honor. There are two quick points that I want to make for the court. One is my friend on the other side argued that in Mr. Love's traverse in response to the state's response to the habeas petition, he admitted that he had notice of the executive directive in his estate rehearing proceedings. I think my friend is mistaken. I've just looked at the document that Mr. Love filed. It's at document 15 of the district court record, page ID 182. On that page, Mr. Love is reacting to the executive directive, which had just been provided to him in the state's response to the district court's order to show cause. And he's arguing that, well, some parts of this appear to be in the 2020 version of the policy, but even there, it says that for the offense that I was charged with, A102, it's still a one-year maximum. So that's not him saying I had a copy of this policy and knew about it in the state administrative proceedings. It's him reacting to the arguments that the state made in the district court. Does that matter, though, that he didn't have a copy of the policy? Because certainly as soon as he received the sanction, he would have known that he wasn't given an opportunity to argue mitigation. So, Your Honor, I think it matters for a couple of reasons. One is that when he received the sanction, he thought that there was kind of an administrative type of error. The policy said only up to a year. They took everything away. So in his prison administrative appeals, he's arguing, hey, that's inconsistent with the policy. He would have needed to know that actually it's inconsistent with the adult disciplinary offender code. He would have needed to know that this executive directive exists to be able to say, hey, hey, hey, wait, hold on a second. No, no, no. That's not my question. I understand what you're saying he argued, but he never argued that he didn't have an opportunity to argue for mitigation. I see. Okay, so that raises a separate issue. It has nothing to do with either of the policies. He gets this massive sanction, and doesn't he then have to make the claim in the state proceeding? I never got the chance to argue for mitigation or something like that in order to preserve it. It wouldn't have made sense for him to argue that because he was arguing the most logical argument available to him, which is what you told me says it's a year, and you took everything away. I agree 100 percent, but how does that preserve it? I mean, the test isn't would it have made sense for him to argue it. A lot of times we have these issues of constitutional importance that are waived or not protected below because parties don't think of them, and that sounds like what happened here. No, Your Honor. I would say that there's no way for Mr. Love to have raised the argument that's in his briefing before this court, applying this policy, deciding beforehand violates my due process rights, without knowing that the policy existed, and he didn't know that until the district court. We would agree on that. Would the Department of Corrections, for a hearing officer, for example, entertain the notion that the policy from his commissioner is unconstitutional? Your Honor, I doubt it. The only reason I hesitate is because at least somebody in the Indiana prison system appears to think that there are some circumstances where they can decline to apply the policy. We pointed to the Rodney Perry case. But I do think it's implausible, given the way that the officials in this case acted, that they would have felt that they had discretion to entertain that argument. So I want to kind of close with one additional point. There's been some discussion here today about whether, given the gravity of the liberty interest at stake, more process, more criminal trial process might be needed. That might be so, but the bare minimums of due process, which is a meaningful opportunity to be heard, would have been enough to protect Mr. Love in this case. And we're not asking for a radical expansion of constitutional law. We're asking for the prison to not make up its mind about what the sanction is going to be before it gives Mr. Love a chance to present arguments in mitigation. We think that's black-letter constitutional law applied in a new context, admittedly, but not a huge extension. And so we would respectfully request that the court reverse the district court's denial of habeas relief. Thank you. Thank you very much, Mr. Rashid. Thank you, Mr. Pontarosa. Thank you to your firm as well for taking on this appointment. We appreciate your hard work. Thank you as well, Mr. Banks, for your hard work on this case. The case will be taken under advisement.